IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL A. WRIGHT,<br>Plaintiff, | : | |
| vs. | : | CIVIL ACTION 17-00345-WS-MU |
| CARTER, et al.<br>Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff Paul A. Wright, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed his complaint under 42 U.S.C. §§ 1983. (Doc. 1). This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Defendants' Motion for Summary Judgment. (Doc. 39). After careful review of the pleadings, and for the reasons set out below, it is ordered that Defendants' Motion for Summary Judgment be **GRANTED** in favor of Defendants and that the claims asserted against Defendants be **DISMISSED** with prejudice.

**I.    Complaint Allegations.**

Plaintiff alleges in his complaint that on May 3, 2017, while housed at the Mobile County Metro Jail ("the jail"), an officer coaxed him into jumping off a flight of stairs, and thereafter, he was denied medical attention. Plaintiff asserts Corporal Carter "caught an attitude" after Plaintiff asked for help, and then a verbal and physical altercation ensued. During the altercation, Corporal Carter (and another officer) grabbed Plaintiff by the arm. (Doc. 1 at 4). "Out of fear of other officers," Plaintiff pulled away and ran up a flight of stairs in the 1005-E Wedge of the jail. (Id.). Accordingly to Plaintiff, Corporal Carter

"dared" Plaintiff to jump from the stairs. Plaintiff claims, he believed the officers were "going to jump" him and, fearing for his own life, he jumped. (Id.). Plaintiff further claims, "I hurt my shoulder, back, and neck and the officers never got me no medical help after they saw me spitting up blood", and Defendants failed to report the incident. (Id.).

Plaintiff seeks compensatory damages for physical and mental distress and residual health issues.

## II.     Defendants' Special Answer and Special Report.

The defendants have answered the suit, denying the allegations against them, and submitted a special report in support of their position. (Docs. 16, 17). As Defendants explain, the Mobile County Metro Jail is divided into "Pods," which are subdivided into "Wedges," with each Wedge containing two (2) tiers of cells. On May 3, 2017, Corporal Carter was assigned to the 1005 Pod, where Plaintiff was housed. Plaintiff asked "to see Mental Health" but Corporal Carter denied his request, advising Plaintiff that approval from Mental Health had to be obtained first and the floor officer was unavailable to escort Plaintiff at that time. (Doc. 16-1). Thereafter, at approximately 3:12 p.m., Corporal Carter observed Plaintiff attempt to climb over the top tier of the Wedge, in Pod 1005. Corporal Carter avers that he notified Sergeant Andrews of Plaintiff's actions, and a Code 25-A (attempted suicide) was broadcast via radio to the jail. Sergeant Andrews, Lieutenant Westry, Segeant Scott, Correction Officer Byrd, Correction Officer Joshua Wilson, the Director of Mental Health at the jail, and Nurse Practitioner Thomas responded to the code.

Corporal Carter denies daring Plaintiff to jump from the top tier and avers that he "ran down the stairs to the G Wedge [to] try and catch Wright in case he tried to jump

from the top tier" while Lieutenant Westry tried to talk to Plaintiff to keep him from jumping. (Doc. 16 at 1; Doc. 16-1 at 2). However, Plaintiff did not follow Lieutenant Wesley's commands and jumped and/or fell onto three (3) mats which were placed on the floor beneath him to break his fall. This is similarly confirmed by the following nonparties:

Lieutenant Westry declares by affidavit that he attempted to talk Plaintiff down from the top tier railing and that he never heard any corrections officer dare Plaintiff to jump or encourage Plaintiff to do anything other than climb back on to the second tier. He further declares that Plaintiff was taken to the medical clinic but refused any medical treatment by the medical staff. (Doc. 16-2).

Nurse Practitioner Deanna Thomas avers being present at the scene of the incident subject of this complaint. Thomas avers that Plaintiff was on the top ledge threatening to jump in the presence of officers and medical staff. She further avers that at no time did she hear any corrections officer dare Plaintiff to jump or threaten him in any manner, and Plaintiff "ended up lowering himself to the ground and was guided and landed on mats with the help of the Corrections Officers." (Doc. 16-3).

Similarly, Jillian Harvison, the Mental Health Director for the Mobile County Metro Jail affirms that she observed Plaintiff holding the bar of the top tier railing threatening to jump or fall when she arrived at 1005 Pod. After multiple attempts by security and mental health to get him down from the ledge, he fell from the top tier onto mats that had been placed on the floor. She further avers that security was there to help catch Plaintiff. Ms. Harvison affirms that Plaintiff reported he was mad that he had not been seen about a rash. She further affirms she did not hear any officer dare Plaintiff to jump or threaten him in any manner. (Doc. 16-4).

Defendants contend Plaintiff was placed in restraints and escorted to the jail's medical clinic by wheelchair. Plaintiff, however, refused medical treatment at the jail's clinic, but Plaintiff did not appear to have any injuries at that time.[1]

After a thorough review of the pleadings, the Court converted Defendants' answer and special report into a motion for summary judgment (see doc. 39), and this motion is now ripe for consideration.

## III. Standard of Review.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'" (emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to,

---

[1] Defendants further contend that "[t]his is not the first time Plaintiff has taken such actions" and expound that on February 13, 2017, Plaintiff climbed over the rail and threatened to jump but was talked into climbing back over the rail. (Doc. 16).

the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the

5

record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[2]

IV. **Immunity Defenses.**

In response to the allegations of this suit, Defendants have asserted all available immunity defenses. (Doc. 17). To the extent Plaintiff's claims are against the correctional officers in their official capacities, Defendants are immune from suit, as the liability imposed, in reality, is on the entity the individuals represent versus the individuals themselves. Brandon v. Holt, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985). The determination of the entity represented by the defendants for purposes of determining immunity from suit under 42 U.S.C. § 1983 is determined by reference to state law. Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990). Alabama law holds that a sheriff is a state, rather than a county, official for purposes of immunity from suit. Parker v. Amerson, 519 So.2d 442 (Ala. 1987); Ala. CONST. Art. V § 112 (listing county sheriffs as members of the state's executive department); see also Taylor v. Adams, 221 F.3d 1254, 1256 (11th Cir. 2000) ("Alabama sheriffs operating jails are state officers protected by Eleventh Amendment immunity."). Similarly, "employees of the sheriff, deputies [and officers] in their official capacities, are [] entitled to Eleventh Amendment immunity." Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007); Lancaster v. Monroe Cnty., 116 F.3d 1419, 1429 (11th Cir. 1997) ("[J]ailers are state officials for the purpose of Eleventh Amendment immunity."). There is no dispute that Defendants, in their official capacities as county jail correctional officers, are arms

---

[2] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

of the state for Eleventh Amendment Immunity purposes and are therefore barred from suit for monetary damages in this action.

Defendants further assert the defense of qualified immunity as a bar from suit against them in their individual capacities. Qualified immunity offers complete protection for individual government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009). A party is eligible to claim qualified immunity if he was acting within the line and scope of his employment. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004). Based on Plaintiff's complaint allegations and the record, clearly the defendants were acting within their discretionary authority at the time the complaint arose. Thus, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). First, a court must decide whether the facts that a plaintiff has alleged "show the [defendant's] conduct violated a constitutional right." Id. Second, the court must decide "whether the right was clearly established." Id. The determination of these elements may be conducted in any order. Pearson v. Callahan, 555 U.S. 223, 236, 129

S. Ct. 808, 172 L. Ed. 2d 565 (2009). Therefore, the Court will proceed with its analysis of whether or not Plaintiff has successfully alleged a constitutional violation.

## V. Discussion and Analysis.

As a pretrial detainee, Plaintiff's claims arise under the Due Process Clause of the Fourteenth Amendment. Dang by & through Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1279 (11th Cir. 2017); see also Kingsley v. Hendrickson, __ U.S. __, 135 S. Ct. 2466, 2475, 192 L. Ed 2d 416 (2015) (noting "pretrial detainees (unlike convicted prisoners) cannot be punished at all . . ."). However, the standard for analyzing his claims is the same one used for convicted prisoners under the Eighth Amendment. Id.; see Johnson v. Bessemer, Ala., 741 F. App'x 694, 699 n.5 (11th Cir. 2018) (unpublished) (distinguishing a pretrial detainee's excessive force claim from a pretrial detainee's non-force claims after Kingsley v. Hendrickson, 576 U.S. __ , 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015)); McBride v. Houston Cty. Health Care Auth., 658 F. App'x 991, 996 n.5 (11th Cir. 2016) (unpublished) (applying the Eighth Amendment's decisional law to a pretrial detainee's Fourteenth Amendment medical claim post-Kingsley).

Plaintiff is suing Corporal Carter, Captain Stallworth, and Warden Trey Oliver, III, for "abuse of authority"[3] and failure to provide medical treatment following the May 3, 2017 incident. In order to establish his claim, Plaintiff must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (alteration added) (citing Chandler v. Crosby,

---

[3] Abuse of authority is not a constitutional violation unless the behavior "shocks the conscience" or is an "egregious abuse of governmental power." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 140 L. Ed. 2d 1043, 118 S. Ct. 1708, 1717 (1998).

8

379 F.3d 1278, 1289 (11th Cir. 2004)). To satisfy the objective component, Plaintiff "must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." Id. The subjective component requires Plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Id. To successfully state a claim of deliberate indifference, Plaintiff "must allege that a prison official (1) had subjective knowledge of a substantial risk of serious harm and (2) disregarded that risk "by conduct that is more than mere negligence." Alvarez v. Sec'y, Fla. Dep't of Corr., 646 F. App'x. 858, 862 (11th Cir. 2016) (internal quotation marks omitted) (quoting Richardson, 598 F.3d at 737).

Taking Plaintiff's facts as true, as the Court must at this stage of the action, Plaintiff has failed to establish a claim rising to the level of a constitutional violation.

**A. Plaintiff has failed to establish Defendants acted with deliberate indifference to his jumping and/or falling from the top tier of the 1005 Pod.**

Plaintiff alleges § 1983 liability for Corporal Carter's verbal comment, dare, and/or encouragement to jump from the second tier of the 1005 Pod to the floor. Courts have long recognized that repugnant words and verbal harassment will seldom rise to a constitutional violation, as "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners." Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). Only in extreme cases, where an inmate's known psychological vulnerability was used to cause psychological anguish, may words be found to rise to a constitutional level.

9

For instance, in Lisle v. Welborn, the inmate plaintiff sued the nurse defendant for intentionally disregarding his risk of suicide. The facts presented showed that while the inmate was on suicide watch, after a failed attempt, the nurse responsible for monitoring and evaluating the inmate taunted him for being unsuccessful and encouraged Lisle to kill himself. The court concluded such statements could be deemed cruel infliction of mental pain and deliberate indifference to his risk of suicide, making summary judgment improper. 933 F.3d at 717.

In Olson v. Bloomberg, 339 F.3d 730 (8th Cir. 2003), the officer defendant was denied summary judgment for acting with deliberate indifference to suicidal inmate's medical needs. The facts revealed that the inmate directly communicated a present intent to commit suicide and identified his chosen method, and the officer then encouraged the inmate to do so by stating "do what you have to do," left the catwalk, and refused to return for approximately 25 minutes - after other inmates warned the officer of the inmate's hanging. Despite taking some affirmative steps in response to the suicide threat (i.e., talking to the inmate and trying to convince him not to commit suicide and telling another officer to call a code red emergency), the court reasoned if the officer knew that there was a substantial risk of serious harm to the inmate, based on the inmate's communication of his intent to commit suicide, and if the officer deliberately disregarded the risk of suicide by encouraging the inmate to do so and by intentionally delaying his response to the inmate, by refusing to return to help him after being informed of the inmate's hanging, then his conduct would rise to an Eighth Amendment actionable level.

The current case, however, is in stark contrast to Lisle and Olson. Namely, Plaintiff was not on suicide watch nor did Plaintiff express a present intent to commit suicide to

Carter prior to climbing over the top tier railing. After Plaintiff climbed over the second-tier railing, exhibiting a serious risk of harm, Corporal Carter did not delay in responding to protect Plaintiff and his actions can only be viewed as evidencing a subjective intent to protect Plaintiff. Indeed, the facts of record reflect, that Corporal Carter immediately radioed in a code for officers to respond to a possible suicide. He never left Plaintiff alone, and in fact, Corporal Carter ran to the bottom floor to help catch Plaintiff if he did jump from the second-tier (which Plaintiff does not dispute). It is also undisputed that multiple mats were positioned below Plaintiff to protect him from a potential jump. Consequently, regardless of any words used by Corporal Carter, his actions demonstrate a subjective intent to keep Plaintiff safe from harm.

Accordingly, Plaintiff has failed to allege sufficiently or establish that Defendants acted with deliberate indifference to his plan to jump from the second-tier of the 1005 Pod, and it is recommended that summary judgment be **Granted** in favor of Defendants. In the alternative, Defendants are entitled to qualified immunity.

Based on Plaintiff's claims, Defendants were clearly engaged in discretionary authority at the time of the incident of the complaint. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). Thus, if a constitutional violation were found, Plaintiff then bears the burden of showing that the right at issue was clearly established at the time of the defendants' alleged misconduct. Gilmore v. Hodges, 738 F.3d 266, 272-73 (11th Cir. 2013) (internal citation omitted). In determining whether the right at issue was clearly established at the time of the incident, courts must "turn to the precedent of the United States Supreme Court, the precedent of [the Eleventh Circuit Court of Appeals], and to the highest court of the relevant state in interpreting and applying the law in similar

circumstances." Poulakis v. Rogers, 341 F. App'x 523, 527 (11th Cir. 2009). In the instant case, no decision from the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court has clearly established that words alone (harassing, taunting, inappropriate, callous, despicable, or otherwise) expressed from a correction officer to an inmate rise to a constitutionally actionable level. Accordingly, Defendants are entitled to qualified immunity as to any claim that Defendant Carter dared or encouraged Plaintiff to commit jump and/or fall from the second-tier of the 1005 Pod, and summary judgment should be **Granted** in favor of Defendants.

**B. Plaintiff has failed to establish Defendants acted with deliberate indifference to his medical needs.**

An officer acts with deliberate indifference when he or she knows a detainee is in "serious need of medical care" and does not obtain medical are for that detainee. Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 (11th Cir. 1997). In determining the seriousness of an injury, the Eleventh Circuit has explained that:

> We define a "'serious medical need' as one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Id. "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009). "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)). We have explained that a successful [constitutional claim for "immediate or emergency medical attention" requires "medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute" a constitutional violation. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-88 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). An arrestee "who complains

that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. at 1188; see also Surber v. Dixie County Jail, (No. 06-11898, Nov. 17, 2006, 11th Cir.) (unpublished opinion).

Fernandez v. Metro Dade Police Dep't, 397 F. App'x 507, 511-512 (11th Cir. 2010).

Turning to Plaintiff's complaint, it is difficult to discern the exact injury sustained by Plaintiff based on Plaintiff's vague, conclusory and sole allegation that "I hurt my shoulder, back, and neck and the officers never got me no medical help after they saw me spitting up blood", and Defendants failed to report the incident.[4] While the court interprets Plaintiff's *pro se* complaint with leniency and liberally construes it, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), *overruled in part on other grounds by* Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Plaintiff's complaint, as he authored it, fails to demonstrate either prong of a deliberate indifference claim.

To start, Plaintiff has failed to establish that he suffered an objectively serious medical need. In evaluating the seriousness of Plaintiff's medical need, the cases below lend guidance.

In Fernandez v. Metro Dade Police Dep't, 397 F. App'x 507 (11th Cir. 2010), the Eleventh Circuit reversed the district court's finding of a serious medical need where the arrestee suffered a bloody nose and mouth, which lasted over five minutes, facial

---

[4] The record before the court clearly belies any claim that the May 3, 2017 incident was not reported. Attached to the Special Report is a certified copy of the Mobile County Metro Jail Unusual Occurrence Report (#S17052001), compiled by Corporal Carter, and narratives attached to the Report from Corporal Carter, Lieutenant Westry, and Officer Joshua Wilson. (Doc. 16-2 at 3-7).

13

bruising, pain, disorientation, and blood clogs in his nose. The court determined the injuries did not create an objectively serious medical need.

In McKnight v. Garriott, No.: 3:15-cv-159-J-39JRK, 2018 U.S. Dist. LEXIS 195489 (M.D. Fla. Nov. 16, 2018), the plaintiff alleges he was beaten and hogtied while handcuffed and suffered bleeding from his face, wrists and shoulder, swelling to the left side of his face, a significant abrasion to his head, as well as head, torso and back pain, and severe headaches. The plaintiff was left hogtied and bleeding for an hour before receiving medical attention. When examined, the blood and dirt were cleaned from the plaintiff's wounds, Neosporin was applied, his finger was bandaged, and an ice pack was given. Plaintiff's wounds healed without sutures or surgical intervention. The court concluded that the plaintiff failed to demonstrate an objectively serious medical need because the plaintiff's injuries were minor, did not require treatment from the hospital, and he was able to be released to the institution for confinement. The court further concluded that a reasonable officer in the defendants' shoes would not have recognized a serious medical need requiring immediate attention and qualified immunity was granted.

In Lelieve v. Oroso, 846 F. Supp. 2d 1294 (S.D. Fla. 2012), the plaintiff suffered bleeding from his mouth after being kicked and stomped on by officers. The court determined the plaintiff's injuries were not objectively serious to put the defendant on notice of a serious medical need, despite that it was later determined the plaintiff had internal bleeding and required medical attention.

In his complaint, Plaintiff articulates one observable symptom, spitting blood, to which he claims Defendants were deliberately indifferent. As laid out above, bleeding from the mouth or Defendants' observation of him "spitting blood" cannot support an

objectively serious injury.  Plaintiff has failed to claim that he bled for any specific time (much less a lengthy duration), that he suffered complications from blood loss, nor has he articulated the manner in which he sustained a cut or wound to cause the bleeding from his mouth.[5]  As such, Plaintiff has failed to carry his burden of establishing a serious medical need.

Similarly, Plaintiff fails to describe or expound on the harm caused to his shoulder, back, and neck, nor does he allege that he experienced pain or the duration of any injury or symptoms.  Cf., Burley v. Upton, 257 F. App'x 207, 210 (11th Cir. 2007) (concluding that back pain was not serious medical need because "it was not so serious that 'if left unattended, [it] pose[d] a substantial risk of serious harm.'").  Neither does Plaintiff claim that he ever informed Defendants of pain to his shoulder, back or neck.  Furthermore, the record is void of allegations that Plaintiff subsequently sought medical treatment after the date of the incident.

Accordingly, Plaintiff has offered no evidence to suggest he had a serious medical need that, if left unattended, would pose a serious risk of medical harm, and neither has he shown that Defendants knew of a serious medical need and ignored it. Plaintiff, therefore, has failed to meet his burden of proof.

Second, the record put forth by Defendants, which Plaintiff has not disputed or responded to in any way, belies Plaintiff's claim that he did not receive medical attention following the May 3, 2017 incident.  The record confirms by numerous affidavits of

---

[5] But cf., Aldridge v. Montgomery, 753 F.2d 970 (11th Cir. 1985) (serious medical need was found where plaintiff suffered one and half inch cut over right eye and continued to bleed for two hours (forming a pool of blood on the floor the size of two handfuls) before receiving medical treatment, where he received six stitches, ice packs, and aspirin, which defendants failed to provide).

witnesses to the incident and procedural reports compiled at the time of the incident, that Plaintiff was immediately escorted to the jail's medical clinic, yet he refused treatment. (See Docs. 16-1; 16-2 at 1-2; 3-4, 5, 6, 7; 16-3; 16-4). Nurse Practitioner Thomas, a nonparty to this action, avers that upon arrival at the medical clinic on May 3, 2017, Plaintiff "appeared angry and refused a medical exam and to have his vital signs taken." (Doc. 16-3 at 1). She maintains, "[h]e had good color and "was in no apparent distress." (Id.). Plaintiff, however, would not answer questions but finally consented to having his blood sugar checked, which reported at 125. Plaintiff refused all other medical care. Nurse Thomas avers there were no obvious injuries or deficits to Plaintiff, and he was escorted out of the clinic.

In light of the forgoing, the undersigned finds Plaintiff has failed to carry his burden to overcome summary judgment, as Plaintiff has failed to establish that he suffered an objectively serious medical need or that Defendants were subjectively aware of a serious medical need. It is recommended that summary judgment be **GRANTED** in favor of the Defendants on this claim.

### C. Plaintiff has failed to state any claim of action against Defendant Warden Trey Oliver, III.

Under § 1983, holding a defendant liable solely for the actions of a subordinate or an employee is not recognized as a viable theory of liability. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a

supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F. 3d 1352, 1360 (11th Cir. 2003).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Moreover, when the underlying actions of a subordinate or employee caused no constitutional harm, liability cannot be imposed on the supervisor, employer, or governmental entity for its allegedly related policy.  City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986).

The record evidences that Defendant Oliver was not present in the 1005 Pod on the afternoon of May 3, 2017, and did not participate in the incident subject of this complaint.  Plaintiff has failed to allege facts showing or indicating that the actions, be it a policy or custom put in place by Defendant Oliver, caused the incident on May 3, 2017. Consequently, Plaintiff has failed to state a cause of action against Defendant Oliver.  It is, therefore, recommended that summary judgment be **Granted** in favor of Defendant Oliver as to all claims asserted against him.

**IV.     Conclusion.**

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED,** and that Plaintiff's action against Defendants be **DISMISSED** with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**ORDERED** this **31st** day of **March, 2020.**

                                        <u>s/ P. Bradley Murray</u>
                                        **UNITED STATES MAGISTRATE JUDGE**